1
2
3
4
5
6
7
8     **UNITED STATES DISTRICT COURT**
9     **CENTRAL DISTRICT OF CALIFORNIA**
10

11    EMANUEL CLAYTON, JR.,              )     NO. EDCV 10-01825 AGR
12                  Plaintiff,           )
13              v.                       )
14    MICHAEL J. ASTRUE,                 )     **MEMORANDUM OPINION AND**
      Commissioner of Social Security,   )     **ORDER**
15                                       )
16                  Defendant.           )
17    _____    )

18          Emanuel Clayton, Jr. ("Clayton") filed this action on December 1, 2010.
19    Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the
20    magistrate judge on December 13 and 27, 2010.  (Dkt. Nos. 8, 9.)  On August 5,
21    2011, the parties filed a Joint Stipulation ("JS") that addressed the disputed
22    issues.  The court has taken the matter under submission without oral argument.
23          Having reviewed the entire file, the court affirms the decision of the
24    Commissioner.
25    ///
26    ///
27    ///
28    ///

1

2

## I.

## **PROCEDURAL BACKGROUND**

On July 27, 2007, Clayton filed an application for supplemental security income benefits alleging an onset date of June 1, 1999.[1]  AR 11-21.  The application was denied initially and upon reconsideration.  AR 11, 86-90, 99-103. Clayton requested a hearing before an Administrative Law Judge ("ALJ").  AR 106.  On June 29, 2009, the ALJ conducted a hearing at which Clayton, a medical expert, and a vocational expert testified.  AR 37-64.  On December 22, 2009, the ALJ issued a decision denying benefits.  AR 8-21.  On November 2, 2010, the Appeals Council denied the request for review.  AR 1-3.  This action followed.

## II.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering

---

[1]  Clayton also filed an application for disability insurance benefits on July 27, 2007, but the application was denied based on *res judicata*.  Administrative Record ("AR") 12, 41-42, 82.  Clayton filed prior applications for disability insurance benefits and supplemental security income in 2001.  AR 69.  Clayton's prior applications were denied on March 9, 2004.  AR 11, 68-77.  In the 2004 decision, the ALJ determined that Clayton could perform sedentary work and simple repetitive tasks.  AR 68-77.

adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

### III.

### DISCUSSION

#### A.    Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

#### B.    The ALJ's Findings

The ALJ found Clayton has the severe impairment of mild degenerative disc disease.  AR 14.  Clayton has the residual functional capacity ("RFC") to perform the full range of medium work.  AR 15.  He is capable of performing past relevant work as a hospital cleaner, fast food worker, and theater ticket taker as actually and generally performed.  AR 20.

#### C.    Development of the Record

Clayton argues the ALJ failed to fully develop the record after discounting the 2003 opinion of a psychiatrist, Dr. DeSilva.  He argues the ALJ should have included in the record the transcript of the medical expert's testimony from a hearing on a prior application.  JS 3-5.

"The ALJ ... has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered."  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and quotation marks omitted).  "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper

3

evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001).  This principle does not, however, allow a claimant to shift his own burden of proving disability to the ALJ.  *Id.* at 459.

The ALJ considered a psychiatric report dated April 15, 2003, by Dr. DeSilva, which related to Clayton's prior applications for disability.  AR 17, 263-71.  The ALJ noted that, at the time, Dr. DeSilva diagnosed Clayton with a "major depressive disorder with psychotic features, a pain disorder associated with both psychological factors and a general medical condition, and nicotine addiction."  AR 17.  Dr. DeSilva assessed a Global Assessment of Functioning ("GAF") score of 55[2] and indicated Clayton had moderate to severe limitations in his ability to "comprehend and follow instructions, perform simple and repetitive tasks, maintain a work pace appropriate to a given workload, perform complex or varied tasks, relate to other people beyond giving and receiving instructions, influence people, make generalizations, evaluations, or decisions without immediate supervision, and accept and carry out responsibility for direction, control, and planning."  AR 17, 263-71.

The ALJ considered Dr. DeSilva's report "of little value because of the reasons cited by Dr. Cable in the prior decision,[3] because it relates in time to a period that was covered by the prior decision, and because it is unsupported by the objective evidence in the file."  AR 17 (footnote added).  The ALJ did not find that the evidence was ambiguous or that the record was inadequate to evaluate the evidence properly.  *See Mayes*, 276 F.3d at 459-60.  The ALJ did not err.

The ALJ's conclusions that Dr. DeSilva's report relates to a time period covered by a previous application and is unsupported by objective evidence in

___

[2]  A GAF score of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders (Text Revision) (4th ed. 2000) ("DSM-IV-TR 34").

[3]  Dr. Cable testified at the prior hearing as a medical expert.  AR 73.

1   the current record are supported by substantial evidence.  The ALJ determined

2   that Clayton had not overcome the presumption of non-disability and found no

3   current evidence of a severe mental impairment that causes any mental

4   limitations.  AR 12.  The principle of *res judicata* applies to administrative

5   decisions, albeit less rigidly than in judicial proceedings.  *See Chavez v. Bowen*,

6   844 F.2d 691, 693 (9th Cir. 1988).  As a general matter, the first ALJ's "findings

7   concerning the claimant's residual functional capacity, education, and work

8   experience are entitled to some *res judicata* consideration in subsequent

9   proceedings."  *Id.* at 694.  However, *res judicata* is disfavored in Social Security

10  proceedings when evidence is presented of new and material changes to the

11  claimant's residual functional capacity, age, education or work experience.

12  *Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir. 1988); *see also* Social Security

13  Acquiescence Ruling 97-4(9), 1997 WL 742758 at *3 (December 3, 1997) ("When

14  adjudicating [a] subsequent claim involving an unadjudicated period, [the ALJ] will

15  apply a presumption of continuing nondisability . . . unless the claimant rebuts the

16  presumption . . . by showing a 'changed circumstance' affecting the issue of

17  disability with respect to the unadjudicated period, *e.g.*, an increase in the

18  severity of the claimant's impairment(s).").[4]  Clayton's prior applications for

19  supplemental security income and disability insurance benefits in 2001, which

20  were denied in March 2004, became administratively final because Clayton did

21  not appeal the decision.  AR 11; *see also Chavez*, 844 F.2d at 693.  The ALJ

22  correctly considered "evidence from the previously adjudicated periods [*i.e.,* Dr.

23  Cable's 2004 testimony and Dr. DeSilva's 2003 opinion] . . . only for the purpose

24  of evaluating the current and material period of alleged disability."  AR 12.

25  _____

26       [4]  "Social Security Rulings do not have the force of law.  Nevertheless, they
    constitute Social Security Administration interpretations of the statute it
27  administers and of its own regulations" and are given deference "unless they are
    plainly erroneous or inconsistent with the Act or regulations."  *Han v. Bowen*, 882
28  F.2d 1453, 1457 (9th Cir. 1989) (citations omitted).

There is no evidence in the record that Clayton received psychiatric treatment since filing the application on July 27, 2007.[5]  AR 17-18.  At the hearing on June 29, 2009, Clayton confirmed that he had not seen a psychiatrist in the past four years.  AR 57.  The ALJ developed the record by ordering a psychiatric consultative examination by Dr. Smith.  *See Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001) ("One of the means available to an ALJ to supplement an inadequate medical record is to order a consultative examination.").  Dr. Smith reported that she saw evidence of exaggeration and manipulation in the mental status examination.  AR 418.  Although Clayton complained that he was depressed and occasionally anxious, his affect was mostly full, animated, and appropriate to topic.  AR 18, 418.  His speech was normal; he was alert and oriented; he appeared to be of at least average intelligence; his insight and judgment appeared to be fair.  AR 18, 418-20.  Dr. Smith diagnosed Clayton with a depressive disorder, NOS, an anxiety disorder, NOS, and assessed a GAF score of 68.[6]  AR 18, 420.  She found him to be at most very mildly impaired from a psychiatric standpoint.  AR 420-21.

The ALJ also adopted the prior ALJ's rationale for discounting Dr. DeSilva's opinion based on the opinion of a previous medical expert, Dr. Cable.  AR 17.  Dr. Cable's testimony related to a time period that was previously adjudicated.[7]  The prior ALJ summarized Dr. Cable's criticism that Dr. DeSilva's assessment that

---

[5]   Clayton received a "psych referral re anxiety-panic."  AR 452.  The physician noted, however, that Clayton appeared oriented and in no distress.  *Id.*  The ALJ noted there is no indication Clayton ever followed through with the referral.  AR 17.

[6]  A GAF score of 61-70 indicates some mild symptoms, such as depressed mood and mild insomnia, or some difficulty in social occupational, or school function, such as occasional truancy or theft within the household, but generally functioning pretty well, with meaningful interpersonal relationships. DSM-IV-TR 34.

[7]  A transcript of Dr. Cable's testimony from the prior hearing was unnecessary for the ALJ's decision and for this court's review.

1  Clayton was permanent and stationary was an unsupported, "odd conclusion",

2  and Dr. Cable expected that Clayton would improve with treatment.  AR 73.  A

3  treating physician's opinion may be discounted as inadequately supported.  *See*

4  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("'[T]he

5  ALJ need not accept the opinion of any physician, including a treating physician,

6  if that opinion is brief, conclusory, and inadequately supported by clinical

7  findings.'") (citation omitted); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d

8  1190, 1195 (9th Cir. 2004) (ALJ did not err in rejecting treating physician's

9  opinion that was unsupported by objective medical findings).  Dr. DeSilva found

10  Clayton to be mildly to moderately depressed and anxious.  AR 265.  He was

11  alert and oriented to time, place, person and situation.  His speech was relevant

12  and goal directed.  *Id.*  Dr. DeSilva saw no evidence of any perceptual

13  abnormalities such as hallucinations or delusions.  *Id.*  He was cooperative and

14  irritable.  *Id.*  Dr. DeSilva diagnosed Major Depressive Disorder, Single Episode.

15  AR 268.

16  To the extent Clayton contends the ALJ erred in discounting Dr. DeSilva's

17  opinion, his contention fails, even assuming Dr. DeSilva was Clayton's treating

18  physician.[8]  As discussed above, the ALJ provided specific and legitimate

19  reasons for discounting her opinion.  *See Orn*, 495 F.3d at 632 (When a treating

20  physician's opinion is contradicted by another doctor, "the ALJ may not reject this

21  opinion without providing specific and legitimate reasons supported by substantial

22  evidence in the record.  This can be done by setting out a detailed and thorough

23  summary of the facts and conflicting clinical evidence, stating his interpretation

24  thereof, and making findings.").  Any error was harmless.

25

26  [8]  The prior ALJ noted that Dr. DeSilva prepared statements for Clayton's
27  workers' compensation claim, but did not treat him.  AR 73.  Respondent
describes Dr. DeSilva as Clayton's treating physician.  JS 5.  An opinion of a
28  treating physician is given more weight than the opinion of non-treating
physicians.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

**IV.**

**ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

DATED: December 29, 2011

ALICIA G. ROSENBERG
United States Magistrate Judge

8